IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GERALD K. KEEHN,

    Plaintiff,

v.

DETECTIVE TROUTMANN, et al.,

    Defendants.

CIVIL ACTION
NO. 17-2109

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**　　　　　　　　　　　　　　　　　　　　　　　**MARCH 29, 2019**

A Section 1983 lawsuit allows individuals to sue the government for civil rights violations when someone is acting "under color of state law" and has deprived the individual of rights under the United States Constitution or federal statutes. Plaintiff Gerald K. Keehn alleges § 1983 violations against multiple Defendants stemming from the investigation which resulted in his criminal conviction in the Court of Common Pleas of Chester County. Mr. Keehn alleges § 1983 violations against Detective Trautmann, Mayor Josh Maxwell, and District Attorney Tom Hogan. Mr. Keehn also ostensibly alleges *Monell* violations against District Attorney Tom Hogan. And finally, Mr. Keehn alleges ethical violations against Crime Victim Advocate Brook Hedderic as counselor to the victim in the underlying criminal case. For the reasons stated below, this Court will grant all motions to dismiss and will deny Mr. Keehn the opportunity to amend the complaint a second time as amendment would be futile.[1]

---

[1] While Mr. Keehn continues to name ADA Emily Provencher as a Defendant, the claims against Ms. Provencher were dismissed with prejudice on May 16, 2017, as she was entitled to absolute prosecutorial immunity as her acts were intimately associated with the judicial phase of the criminal process. (ECF Docket No. 3, at 2.)

## A. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

When addressing a 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. School Dist.*, 452 F.3d 256 (3d Cir. 2006). Given Mr. Trautmann's claims appear related to the criminal proceedings in state court, we must consider these matters of public record as they are integral to the claim.

## B. FACTS PLEADED

Mr. Keehn alleges misconduct on behalf of all Defendants during the investigation which resulted in his criminal conviction in the Court of Common Pleas of Chester County. (ECF Docket No. 24, Ex. C, D.) Mr. Keehn maintains the victim, A.B.[2], gave false statements to law enforcement about the non-consensual nature of their "relationship," arguing the relationship between them was a "consensual affair." (ECF Docket No. 9, at 9) (ECF Docket No. 25, at 5.) Even though A.B. told Det. Trautmann that Mr. Keehn raped her multiple times over four years, Mr. Keehn voluntarily met with Det. Trautmann and told him A.B. lied to the police and has filed multiple rape allegations. (ECF Docket No. 9, at 11.) Mr. Keehn told Det. Trautmann that the victim sent him a text message multiples times offering sex for gas money. (Id.) Mr. Keehn also told Det. Trautmann that his brother was a witness and was in possession of text

---

[2] As A.B. was a minor at the time of the underlying criminal action and the identity is not relevant to the claims before us, we will only use the initials when identifying the victim in the underlying criminal case.

3

messages from April 20, 2012, proving A.B. lied to the Police. (Id.) Moreover, without the consent of Mr. Keehn's lawyer, Det. Trautmann allegedly gave State Police DNA results that proved Mr. Keehn was not the father of A.B.'s child. (Id. at 12.) Det. Trautmann, according to Mr. Keehn, also failed to disclose to State Police: 1) the existence of exculpatory text messages; 2) eye-witness testimony; 3) A.B.'s false statements; and 4) the results from the DNA test—which had nothing to do with the State Police and "violated HIPPA laws." (Id.) Mr. Keehn also alleges Brook Hedderic, Crime Victims Advocate for A.B., knew A.B. lied to the police when she reported the rape, but allowed A.B. to continue lying and never informed the Police that she was lying to them or providing false statements. (ECF Docket No. 9, at 18.) Specifically, Mr. Keehn contends Ms. Hedderic "sat in the meeting with Downingtown police . . . and heard '[A.B.] admit she lied to state police." (Id.)

Because of the above, Mr. Keehn wrote to Chief of Police Holland complaining that he was having issues with Det. Trautmann and that he refused to investigate the people who knew A.B. was lying. As Det. Trautmann is under Chief Holland's control, Mr. Keehn complained, Chief Holland was responsible for his officers and had a duty to investigate Mr. Keehn's complaint. Mr. Keehn then wrote to Mayor Maxwell and complained the police department withheld exculpatory evidence in his case and that he was being harassed by Det. Trautmann. Mr. Keehn also sent Mayor Maxwell the text messages proving A.B. lied to the Police. As the Mayor of Downingtown, Mr. Keehn complained, Mayor Maxwell was responsible for the police violating Mr. Keehn's civil rights.

Following the investigation, on February 1, 2016, the District Attorney filed a criminal complaint charging Mr. Keehn with statutory sexual assault, two counts of sexual assault, aggravated indecent assault with a complainant less than 16 years of age, multiple counts of corruption of minors, two counts of endangering the welfare of children, indecent assault with complainant less than 16 years of age, two counts of aggravated indecent assault without consent, and two counts of indecent assault without consent of other. (ECF Docket No. 24, ¶ 23.) The criminal trial commenced on January 11, 2017. (Id. at ¶ 24.) On January 13, 2017, a jury found Mr. Keehn guilty of statutory sexual assault (F2), sexual assault (F2), aggravated indecent assault less than 16 (F2), two counts of corruption of minors (M1), two counts of endangering welfare of children (F3), and indecent assault person less than 16 years age (M2). (Id. at ¶ 25, citing Ex. C.)

## C. ANALYSIS

Mr. Keehn ostensibly asserts § 1983 malicious prosecution claims against Det. Trautmann, and § 1983 claims against Mayor Maxwell, Chief of Police Holland, and District Attorney Hogan. Mr. Keehn also asserts ethical violations against Crime Victims Advocate Hedderic. Although Mr. Keehn fails to distinguish whether the § 1983 claims asserted against Det. Trautmann, Mr. Maxwell, Mr. Holland, and Mr. Hogan are in an official or individual capacity, we will address both below.

> 1. <u>Mr. Keehn fails to plead a plausible right to relief under § 1983 malicious prosecution against Detective Trautmann.</u>

A claim for malicious prosecution requires a deprivation of liberty as a result of the legal proceedings and requires the plaintiff establish: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted

5

maliciously or for a purpose other than bringing plaintiff to justice." *Watson v. Philadelphia District Attorney's Office*, 2002 WL 31681960, at *3 (E.D. Pa. Nov. 26, 2002); *see also Hilferty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996); *see also Gallo v. City of Philadelphia*, 161 F.3d 217, 222, 225 (3d Cir. 1998) (requiring a showing of some deprivation consistent with seizure). Det. Trautmann argues Mr. Keehn's claim for malicious prosecution fails because Mr. Keehn cannot satisfy elements one, two, and three. Focusing only on element two, "the criminal proceeding ended in plaintiff's favor," we grant Det. Trautmann's motion to dismiss Mr. Keehn's malicious prosecution claim.

A successful malicious prosecution claim requires termination of the prior criminal proceeding in favor of the accused (or plaintiff in the civil action). *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (citing *Carpenter v. Nutter*, 127 Cal. 61 (Cal. 1899)). Requiring termination of the criminal proceedings in favor of the accused prevents a criminal defendant from collaterally attacking a conviction with a civil suit and avoids two conflicting results arising out of the same or identical transaction. *Heck*, 512 U.S. at 484; *see also Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009). So, a malicious prosecution claim "cannot be predicated on an underlying criminal proceeding which terminated in a manner not indicative of the innocence of the accused." *Kossler*, 564 F.3d at 187.

A complete defense against liability exists for malicious prosecution claims when a person against "whom criminal proceedings are instituted is guilty of the crime charged against him." Restatement (Second) of Torts § 657 (1977). According to our Court of

Appeals, a showing of prior criminal proceedings terminating in a plaintiff's favor may be made as follows:

> (a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court.

*Kossler*, 564 F.3d at 187 (quoting *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002)). A favorable termination refers to a "proceeding" or judgment as whole and not merely a "charge" or "offense." A favorable termination of some but not all individual charges does not automatically establish favorable termination of the criminal proceeding as a whole. Our Court of Appeals states, "[f]inality, comity, and federalism all counsel a collateral federal court to stay its hand before undoing the original state court's proceeding." *Id.* at 189.

Mr. Keehn is unable to establish the prior criminal proceeding against him terminated in his favor. Following a trial in the Court of Common Pleas of Chester County, Mr. Keehn was found guilty of statutory sexual assault (F2), sexual assault (F2), aggravated indecent assault of a complainant less than 16 years of age (F2), two counts of corruption of minors (M1), two counts of endangering the welfare of children (F3, M1), and indecent assault of a complainant less than 16 years of age (M2). (ECF Docket No. 24, Ex. C.) His other charges were withdrawn or changed. (Id.) That some of Mr. Keehn's charges were withdrawn or changed is not a favorable termination of the criminal proceedings.

Because Mr. Keehn is unable to satisfy this element of malicious prosecution, we dismiss the malicious prosecution claim against Det. Trautmann.

7

2. <u>Mayor Maxwell, Chief of Police Holland, and Detective Trautmann are entitled to immunity for claims under 42 U.S.C. § 1983</u>.

Claims made under 42 U.S.C. § 1983 require the plaintiff establish: "(1) the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived a person of rights, privileges, and immunities secured by the Constitution." *Bougher v. University of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Mr. Keehn alleges official and individual capacity claims against Det. Trautmann, Mayor Maxwell, and Chief Holland. (ECF Docket No. 9, at 6.) In his prayer for relief, Mr. Keehn requests compensatory and punitive damages against all Defendants in both their official and individual capacities. We will address claims under both official and individual capacity.[3] (Id.)

*a. Official Capacity claims against Mayor Maxwell, Chief of Police Holland, and Detective Trautmann*

While suits against officials in their official capacity are suits against the State and typically protected by immunity, it is well recognized that officials are generally immune from suits seeking monetary relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, n.10 (1989). Claims brought under § 1983 are subject to the Eleventh

---

[3] While Mr. Keehn does not explicitly plead claims against Defendants in their official and individual capacities, Mr. Keehn's prayer for relief requests compensatory and punitive damages for $250,000 against Defendants in both their individual and official capacities. (ECF Docket No. 9, at 6.) Our Court of Appeals states, "[a] defendant being sued in his or her personal capacity should be given adequate notice that his or her personal assets are at stake. Two courts of appeals apparently require the complaint to specifically identify the capacity in which a defendant is being sued." *Melo v. Hafer*, 912 F.2d 628, 636 n.7 (3d Cir. 1990) (citing *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)). Though it is preferable Mr. Keehn be as clear as possible, there is no risk here that Defendants were unaware personal-capacity claims were alleged as Det. Trautmann, Mayor Maxwell, and Chief Holland raised defenses of qualified immunity; a defense only available for a governmental official sued in their personal, and not official, capacity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Conner v. Reinhard*, 847 F.2d 384, 394 n.8 (7th Cir. 1988), *cert. denied*, 488 U.S. 856, (1988); *Melton v. City of Oklahoma City*, 879 F.2d 706, 727 n.32 (10th Cir. 1989*), reh'g granted in part on other grounds*, 888 F.2d 724 (10th Cir. 1989); *Lundgren v. McDaniel*, 814 F.2d 600, 604 (11th Cir. 1987).

Amendment which precludes private federal litigation against states, state agencies, and state officials in their official capacities. Suits against state officials in their official capacity are treated as suits against the State because the state official "assumes[s] the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 25- 27 (1991). The Supreme Court finds an official capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself." *Id.* at 26 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)). As a result, when a state official is sued in their official capacity, the "real party in interest" is the government entity of which the official is an agent.

Mr. Keehn alleges he informed Chief of Police Holland about the "problems he was having with Det [Troutmann]" and his involvement in the case. (ECF Docket No. 9, at 19.) Mr. Keehn alleges he wrote to Chief Holland and Mayor Maxwell, telling them that he asked Det. Trautmann many times to investigate the victim claiming that she made false statements and changed her story but that Det. Trautmann failed to investigate and follow-up. (Id.) Mr. Keehn's allegations against Chief Holland focus solely on his responsibility of the officers as Chief of Police; he claims Chief Holland breached his duty as a Police Chief by not looking into all the evidence which violated Mr. Keehn's civil rights. (Id.) Mr. Keehn contends Mayor Maxwell and Chief Holland are responsible for the officers within the department and seeks monetary relief—compensatory and punitive—from Defendants in both their individual and official capacities.

The Downingtown Police Department and Borough of Downingtown—the governmental entities where Chief Holland, Mayor Maxwell, and Det. Trautmann are agents—are afforded immunity as an instrumentality of the Commonwealth of Pennsylvania. Because the Eleventh Amendment precludes private federal litigation against states, immunity extends to the Police Department and Borough for § 1983 claims. *See Benn v First Judicial District*, 426 F.3d 233, 241 (3d Cir. 2005) (citing cases where the Third Circuit granted Eleventh Amendment immunity to Pennsylvania agencies and entities such as the Pennsylvania Department of Public Welfare, Pennsylvania Department of Labor and Industry, state university system, Pennsylvania Department of Environmental Resources, and Pennsylvania Department of Transportation). As a result, Chief Holland, Mayor Maxwell, and Det. Trautmann are immune from liability for § 1983 claims against them in their official capacity.

To the extent Mr. Keehn alleges *Monell* violations against the Police Department and Borough, his § 1983 claim would still fail. An official capacity claim against the Police Department and Borough is, in essence, a municipal liability claim governed by *Monell*. *Monell v. NewYork City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *see also McHugh v. Koons*, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim . . . pursuant to *Monell*."). *Monell* established that a municipality can only be found liable for § 1983 claims "where the municipality *itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658

(1978)).  Specifically, § 1983 liability only attaches when the "execution of the government's policy or custom" causes the injury.  *Id.*  Without a *Monell* claim or waiver of Eleventh Amendment immunity, "a State cannot be sued directly in its own name" leading to an imposition of fee liability upon the governmental entity.  *Kentucky v. Graham*, 473 U.S. 159, 168 (1985).  Also, following *Monell*, a municipality "will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees."  *Wilson v. City of Philadelphia*, 2016 WL 1392250, at *16 (E.D. Pa. Apr. 8, 2016) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

Mr. Keehn does not allege the Police Department or Borough's policies were unconstitutional.  Instead, Mr. Keehn argues Chief Holland and Mayor Maxwell failed to carry out their duties as Chief Holland was responsible for his officers, specifically Det. Trautmann, and Mayor Maxwell was responsible for Chief Holland.  Whether a municipal policy caused a constitutional deprivation in this case has not been raised and therefore no *Monell* analysis is necessary.

And as addressed above, clearly *respondeat superior* liability will not attach for § 1983 claims as Chief Holland and Mayor Maxwell, in their official capacities, cannot be held liable for the alleged misconduct of their employees.

### b. Individual/Personal Capacity claims against Mayor Maxwell, Chief of Police Holland, and Detective Trautmann

State officials sued in their individual capacities are "persons" within the meaning of § 1983.  *Hafer*, 502 U.S. at 31.  Individualcapacity suits seek to impose personal liability on a government official for acts taken under color of state law.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  To establish personal liability under § 1983, "it is

enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 167. An official being sued in their individual capacity may, depending on their position, assert immunity defenses "such as objectively reasonable reliance on existing law." *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976) (absolute immunity); *Pierson v. Ray*, 386 U.S. 547, (1967) (absolute immunity); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (qualified immunity); *Wood v. Strickland*, 420 U.S. 308 (1975) (qualified immunity). Immunity for personal-capacity actions differ from official capacity as the only immunities available under official capacity actions "are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment." *Id.*

Mr. Keehn does not allege specific § 1983 violations against Mayor Maxwell, Chief Holland, or Det. Trautmann in their individual capacities; instead, Mr. Keehn merely alleges individual capacity claims against these Defendants in his prayer for relief requesting compensatory and punitive damages. Defendants Maxwell, Holland, and Trautmann argue they are entitled to qualified immunity as it was objectively reasonable for Det. Trautmann, and by extension Mayor Maxwell and Chief Holland, to believe the prosecution of Mr. Keehn was lawful.

The doctrine of qualified immunity serves to protect officers from civil liability "when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014). As qualified immunity is immunity from suit rather than a mere defense to

liability, we are required to resolve the question before further discovery is conducted. *Pearson*, 555 U.S. at 231. When analyzing qualified immunity, the courts make two inquiries: 1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and 2) "whether the right at issue was 'clearly established' at the time of a defendant's alleged misconduct." *Id.* at 232 (citing Saucier v. Katz, 533 U.S. 194 (2001)). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 780. "[E]xisting precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Id.* Qualified immunity "gives ample room for mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F. 3d 248, 254 (3d Cir. 2010).

As the Supreme Court defers to the lower federal courts regarding *Saucier's* two-step inquiry, in addressing the conduct of the officers, the Defendants are entitled to qualified immunity because Mr. Keehn's arrest and subsequent conviction did not violate clearly established law. *See Pearson*, 555 U.S. at 236. An officer conducting an investigation which results in a subsequent guilty conviction is entitled to qualified immunity as his actions would be considered objectively reasonable "assessed in light of the legal rules that were clearly established at the time [the action] was taken." *Pearson*, 555 U.S. at 244. Mr. Keehn implies his due process rights were violated when Det. Trautmann failed to disclose that A.B. lied to State Police and failed to obtain

exculpatory evidence, exhibiting deliberate indifference towards Mr. Keehn. But as Det. Trautmann, Mayor Maxwell, and Chief Holland argue:

> [I]t was objectively reasonable for Detective Trautmann to believe the prosecution of Plaintiff was lawful. Even if Detective Trautmann's actions were shomehow deemed unlawful, his reasonable, but mistaken belief about what was required at the time still shields him from liability. The same holds true for Mayor Maxwell and Chief Holland.

(ECF Docket No. 24, at 10.) Though Mr. Keehn alleges misconduct on behalf of Det. Trautmann, Mayor Maxwell, and Chief Holland, his second amended complaint lacks the necessary facts to establish these Defendants violated clearly established law and that a federal cause of action exists. Clearly, individuals have the right to be free from criminal prosecution in the absence of probable cause—which violates traditional notions of due process—but a government official may be entitled to qualified immunity based on the objective legal reasonableness of the action. Here Defendants Mayor Maxwell, Chief Holland, and Det. Trautmann are entitled to qualified immunity as they reasonable believed their conduct complied with the law and Mr. Keehn fails to plead otherwise.

### 3. Tom Hogan is entitled to absolute prosecutorial immunity.

Prosecutors are entitled to absolute prosecutorial immunity from liability for § 1983 claims when acting within the scope of their duties.[4] *Imbler v. Pachtman*, 424 U.S. 409, 422 (1976). Prosecutorial immunity applies when prosecutors act as officers of the court (e.g. within the scope of duty) and not as administrators or investigative officers. *Id.* at 431 n.10. A prosecutor acts as an "officer of the court" if the act is "intimately associated with the judicial phase of the criminal process," or "connected with the initiation and conduct of the prosecution." *Burns v. Reed*, 500 U.S. 478, 491-92 (1991)

---

[4] This Court's use of "scope of duty" is not to be confused with the phrase "acting in their official capacity" which refers to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991).

(finding prosecutor's action of appearing before a judge and presenting evidence in support of a search warrant involved the prosecutor's role as "office of the court" rather than "administrator or investigative officer.") (citing *Imbler*, 424 U.S. at 430-31). "Officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue." *Hafer*, 502 U.S. at 29. Absolute immunity extends to "officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Schrob v. Catterson, 948 F.2d 1402,* 1411 (3d Cir. 1991).

The court's application of absolute immunity, though, is not unlimited. As addressed above, officials seeking absolute immunity must show that the immunity is justified for the governmental function at issue. *Hafer*, 502 U.S. at 29; *see also Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999); *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). But, state officials are not entitled to absolute immunity for official actions such as administrative employment decisions or investigatory functions, with "no more than qualified immunity [attaching]." *Hafer*, 502 U.S. 21, at 29 (citing *Forrester v. White*, 484 U.S. 219 (1988) (dismissal of court employee by state judge).

When absolute immunity does not attach, qualified immunity protects an official's actions if the officer believes the behavior was "objectively reasonable" considering the constitutional rights affected. *Giuffre v. Bissell*, 31 F.3d 1241, 1252 (3d Cir. 1994). Our Court of Appeals states:

> The decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred. Harm to a falsely-charged defendant is remedied by safeguards built into the judicial system—probable cause

> hearings, dismissal of the charges—and into the state codes of professional responsibility.

*Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (internal citations omitted). Where a prosecutor performs investigatory functions normally performed by a detective or police officer, the same level of immunity applies—qualified immunity—given the nature of the similar acts. *Giuffre*, 31 F.3d at 1252. For example, the Court in *Buckley* concluded a prosecutor sued under § 1983 was not entitled to absolute immunity after allegedly fabricating evidence against a murder suspect and making false statements to the press about that evidence because he was not acting as an advocate for the State. *Buckley v. Fitzsimmons*, 113 S.Ct. 2606, 2617-18 (1993).

But here, like with ADA Emily Provencher where we dismissed the claims against her and extended absolute prosecutorial as her acts were "intimately associated with the judicial phase of the criminal process," Mr. Hogan is entitled to absolute prosecutorial immunity from liability for Mr. Keehn's § 1983 claim. (ECF Docket No. 3, at 2.) Mr. Keehn alleges Mr. Hogan, as the chief law enforcement officer in Chester County, failed to report a crime and prosecute A.B. for lying to the police. (ECF Docket No. 25, at 9.) Mr. Keehn also alleges he provided Mr. Hogan with copies of the state police report that showed Ms. Provencher lied and mislead the courts by withholding that A.B. "accused someone else of rape . . . and knowingly accused [Mr. Keen] of [the] same crime." (ECF Docket No. 9, at 16.) Mr. Keehn contends he told Mr. Hogan about these issues and Mr. Hogan failed to investigate.

First, it is well settled that a "private citizen lacks judicially cognizable interest in the prosecution or nonprosectuion of another." *Linda R.S. v. Richard D.*, 410 U.S. 6145, 619 (1973); *Godfrey v. Pennsylvania*, 525 F.App'x 78, 80 n.1 (3d Cir. 2013) (per curiam)

16

(finding "no federal right to require the government to imitate criminal proceedings."). Second, as Mr. Hogan's actions were intimately associated with the judicial phase of the criminal process, he is immune from a civil suit for damages under § 1983. Although Mr. Keehn complains of Mr. Hogan's inaction during the discovery/investigative process, Mr. Keehn does not allege Mr. Hogan, as a prosecutor, performed the investigative functions normally performed by a detective or police officer. Specifically, Mr. Keehn only alleges Mr. Hogan "was made aware of the problem [he] pointed out and he himself could have investigated or had some one [investigate]." (ECF Docket No. 9, at 17.) And so, Mr. Hogan is entitled to absolute immunity here.

Mr. Keehn appears to also allege a *Monell* violation against Mr. Hogan for failing to supervise his employees. Specifically, Mr. Keehn alleges Mr. Hogan is "responsible for all of his attorneys in the DA's office" and that Mr. Hogan was aware of Mr. Keehn's complaints surrounding the investigation and criminal proceeding. (ECF Docket No. 9, at 17). Mr. Keehn's allegations, which we take as true, ostensibly blames a policy or custom within the DA's office for violating his civil rights. (ECF Docket No. 25, at 10-11.) As discussed above, an official capacity claim against the District Attorney is effectively a municipal liability claim governed by *Monell*. *Monell v. NewYork City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *see also McHugh v. Koons*, 2015 WL 9489593, at *9 (E.D. Pa. Dec. 30, 2015) ("An official capacity suit against a prosecutor is essentially a municipal liability claim . . . pursuant to *Monell*.").

When the alleged policy in question concerns a failure to supervise municipal employees, as it does here, liability under § 1983 requires a showing of deliberate indifference "with the rights of persons with whom [the employee] came into contact." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Harris*, 489 U.S. 378, 388 (1989)). A failure to train or supervise amounting to deliberate indifference requires a showing that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992).

Mr. Keehn fails to establish deliberate indifference. Though he alleges Mr. Hogan "is responsible for his attorneys," he does not complain of a specific policy or custom which caused his injury. While our Court of Appeals in *Carter* concluded that the District Court's "insistence that [the plaintiff] must identify a particular policy and attribute it to a policymaker, at the pleading stage without benefit of discovery, is unduly harsh," the plaintiff in that case alleges he spent "ten years in prison as a result of pervasive pattern of egregious, unconstitutional conduct by Philadelphia's police." *Carter*, 181 F.3d at 358. Here Mr. Keehn merely alleges Mr. Hogan failed to investigate claims made by Mr. Keehn involving the investigation surrounding his criminal actions. We do not find that this rises to the level of deliberate indifference.

The § 1983 claims against Mr. Hogan will be dismissed as he is entitled to prosecutorial immunity and Mr. Keehn fails to plead a plausible right to relief under *Monell*.

> 4. <u>Mr. Keehn fails to plead a plausible right to relief against Crime Victims Advocate Brook Hedderic.</u>

Mr. Keehn alleges Crime Victims Advocate Brook Hedderic failed to advise State Police that A.B. allegedly lied to the police and that Ms. Hedderic breached her "ethical duty" to provide police with information it ostensibly already possessed. (ECF Docket No. 27, at 6.) Mr. Keen alleges A.B. changed her story and accused someone else of rape which required Ms. Hedderic disclose this information to the police.

While the communication between victim and victim advocate is typically privileged, the communication is not privileged in certain jurisdictions if the crime victim "knows that the victim will give or has given perjured testimony or if the communication contains exculpatory evidence." AZ ST § 13-4430. But, Pennsylvania law, specifically regarding confidential communications with sexual assault counselors, states:

> No sexual assault counselor or an interpreter translating the communication between a sexual assault counselor and a victim may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.

42 Pa.C.S.A. § 5945.1; *see also* 23 Pa.C.S.A. § 6116. According to the National Center for Prosecution of Violence Against Women, the victim-counselor privilege for victims of domestic violence and/or rape in Pennsylvania is an absolute privilege that may only be waived by the victim. National Center for Prosecution of Violence Against Women, National District Attorney Association (March 28, 2019) *https://ndaa.org/wp-content/uploads/Victim-Advocate-Confidentiality_1.pdf.* As A.B. did not waive her privilege, no obligation existed for Ms. Hedderic to disclose that A.B. allegedly lied about the incident with Mr. Keehn. Yet according to Mr. Keehn's complaint, the police

19

were already in possession of A.B.'s recorded confession where she allegedly "lied to the Police." (ECF Docket No. 9, at 13); see also (ECF Docket No. 27, at 6.)

Also, to the extent Mr. Keehn alleges Ms. Hedderic was negligent in her role as a Crime Victims Advocate, Ms. Hedderic owed Mr. Keehn no duty or obligation recognized by law. Ms. Hedderic's only duty is to the victim in her role as a Crime Victims Advocate. As this Court cannot identify any legally cognizable claim alleged by Mr. Keehn, we will dismiss the claims against Ms. Hedderic as Mr. Keehn fails to plead a plausible right to relief.

### D. CONCLUSION

In the accompanying Order, this Court will grant all Defendants' Motions to Dismiss. The § 1983 claim against Defendant Trautmann is dismissed because Mr. Keehn fails to plead a plausible right to relief for malicious prosecution. The § 1983 claims against Defendants Holland, Maxwell, and Trautmann, in their official and individual capacities, are dismissed as they are entitled to immunity and cannot be held liable under *respondeat superior*. The claim against Defendant Hogan is dismissed as he is entitled to absolute prosecutorial immunity as his actions were intimately associated with the judicial phase of the criminal process. And finally, the claim against Defendant Hedderic is dismissed as Mr. Keehn does not and cannot allege a legally cognizable claim against her.

We will not grant Mr. Keehn further leave to amend under Federal Rule of Civil Procedure 15(a) because the complaint, as amended, would fail to state a claim upon which relief may be granted. As Mr. Keehn has already amended his complaint once, another amendment would be futile.